# United States District Court
# Central District of California

| | |
|---|---|
| DARRELL WORTHEN,<br><br>    Plaintiff,<br><br>v.<br><br>DEBORAH LEE JAMES,<br>Secretary of the Air Force<br><br>    Defendant. | Case № 2:15-cv-01747-ODW-JC<br><br>2:16-cv-03181-ODW-JC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [38]** |

## I. INTRODUCTION

Plaintiff Darrell Worthen ("Plaintiff" or "Worthen") brings an action against the United States Air Force for unlawful discrimination under Title VII. Defendant Deborah Lee James ("Defendant" or "the Air Force") moves for summary judgment on all of Worthen's claims. For the reasons discussed below, the Court **GRANTS** Defendant's Motion.[1] (ECF No. 38.)[2]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] All citations to the docket refer to the lead case, 2:15-cv-01747-ODW-JC, unless expressly noted otherwise.

## II. FACTUAL BACKGROUND

Worthen, who identifies as African American, was formerly employed as a federal police officer for the Air Force in the 61st Air Base Group.[3] (Def.'s Statement of Uncontroverted Facts ("Def.'s SUF") ¶¶ 1–2, ECF No. 38-1; Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶¶ 1–2, ECF No. 46.) Worthen alleges that the Air Force unlawfully discriminated against him on a number of occasions based on his race and/or in retaliation for previous discrimination complaints, between September 2011, and November 2014. (First Am. Compl. ("FAC") 2–3, ECF No. 16.) In response to the alleged discrimination, Worthen spoke with an Equal Opportunity Counselor and received notice of his right to file a complaint with the Equal Employment Opportunity Commission ("EEOC") for each of his claims (Claim No. 9D1S12020, Claim No. 9D1S13031, and Claim No. 9D1S15001). (*Id.* Ex. 2.)

On March 10, 2015, Worthen initiated this Title VII employment discrimination case against the Air Force. (Compl., ECF No. 1.) Worthen claims that the alleged discrimination is manifested by a failure to promote, reduction in wages, working conditions that differed from similarly situated employees, harassment, bullying, intimidation, reprisal, retaliation, demotion, and wrongful discharge from employment for a period of time. (*Id.*)

On May 9, 2016, Worthen initiated a second civil action, Case No. 2:16-cv-03181, asserting Title VII claims based on his fourth-and-final claim before the EEOC

---

[3] Worthen disputes the majority of the facts included in Defendant's Statement of Undisputed Facts. For a number of these "disputes," Worthen does not actually dispute whether the fact is true or the particular event occurred. In a number of instances, Worthen complains that a particular document issued to him or an action taken violated the collective bargaining agreement ("CBA") between Defendant and his union or some federal law. (*See, e.g.*, Pl.'s SMF ¶¶ 4, 5, 12, 20, 22, 23.) To properly dispute a statement of fact, which is adequately supported by the moving party, the opposing party must both dispute the fact in a Statement of Genuine Disputes and provide declarations or other written evidence controverting the fact. C.D. Cal. L.R. 56-3. To the extent Worthen has not met this requirement, the Court accepts as admitted the facts contained in Defendant's Statement of Undisputed Facts.

1 (Claim No. 9D1S15011). On September 13, 2016, the Court consolidated these two related actions. (ECF No. 26.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. Additionally, a party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence files in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Worthen bases his claims on four main adverse employment consequences, including where: (1) the Air Force suspended him in April 2012, and then delayed paying him; (2) Sergeant Lewis made negative comments, and then assigned him to Gate 1 duty in June 2013; (3) the Air Force restricted his ability to take leave in September 2014; and (4) the Air Force revoked his firearm authorization and subjected him to a further background check to maintain his security clearance. The Court will first address the legal framework for Worthen's Title VII claims and then address each of the events on which Worthen bases his causes of action.

### A. Legal Framework for Title VII Race Discrimination & Retaliation Claims

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). This provision makes "disparate treatment" based on race a violation of federal law. *See Villiarimo*, 281 F.3d at 1062.

The Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) provides the legal framework for ruling on a summary judgment in a Title VII case. Under this framework, to show disparate treatment under Title VII,

Worthen must first establish a prima facie case of discrimination. *Id.* at 802. Specifically, he must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably. *Id.* "The requisite degree of proof to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

If the plaintiff establishes a prima facie case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the plaintiff must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Worthen also alleges that he was discriminated against in retaliation for bringing claims before the EEOC. Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* framework applies to a retaliation claim as well. The plaintiff must first establish a prima facie case of retaliation by showing he engaged in a protected activity, that his employer then took adverse employment action, and that a causal link exists between the two. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). Once the plaintiff establishes a prima facie case, the burden shifts to the

defendant to articulate some legitimate, non-retaliatory reason for the adverse action. *Id.* If the defendant meets this burden, the plaintiff must then show that the asserted reason was a pretext for retaliation. *Id.* The ultimate burden of persuading the Court that the defendant unlawfully retaliated against him remains at all times with the plaintiff. *Id.* at 796–97.

Although the Court is not certain that Worthen has established a prima facie case of discrimination, even given the low threshold of evidence required to do so, the Court need not resolve that question definitively. *See Villiarimo*, 281 F.3d at 1062. Instead, the Court may assume for the purpose of this Order that Worthen has met the prima-facie standard for certain claims and turn instead to Defendant's articulated non-discriminatory reasons and Worthen's response.

**B.    April 2012 Suspension & Payment Delay**

*1.    Suspension*

On September 1, 2011, Lieutenant Paul Benavente issued Worthen a Notice of Proposed Three (3) Day Suspension. (Def.'s SUF ¶ 20.) The Notice provided four grounds for the suspension: (1) violating uniform policy by wearing shorts, instead of pants, to training on May 27, 2011; (2) showing up late for training on July 22, 2011; (3) sleeping while on duty on July 20, 2011; and (4) failing to follow an order to have the tail lights on his truck fixed. (Def.'s Evidentiary App. ("Def.'s App.") Ex. 1, ECF No. 38-2.) The Notice also specified that Worthen could reply to the proposed suspension within ten workdays. (*Id.*)

On April 9, 2012, Captain Scott Hall issued a suspension letter, sustaining three of the four charges that Lt. Benavente proposed—deciding not to sustain the charge relating to the tail lights on Worthen's truck—and suspending Worthen for two days. (Def.'s SUF ¶¶ 22, 23; Def.'s App. Ex. 2.) Captain Hall explained that Worthen's union representative requested an extension of the deadline to reply to the proposed suspension until January 23, 2012. (*Id.*) Captain Hall granted the request, but Worthen did not submit a response by the new deadline. (*Id.*) Worthen eventually

submitted a response on February 2, 2012. (*Id.*) In the suspension letter, Captain Hall explained that his decision to suspend was based, in part, on Worthen's admissions that he (1) wore shorts to training, which is a violation of the dress code and (2) arrived late to training. (*Id.*; *see also* Decl. of Darrell Worthen ("Worthen Decl.") ¶¶ 6, 7 (acknowledging that he violated the dress code and arrived late to training), ECF No. 46 at 119.) Captain Hall also explained that Worthen did not dispute the fact that he was sleeping on duty; instead, Worthen responded that he was not timely notified that he would receive disciplinary action for sleeping. (*Id.*) Pursuant to Captain Hall's suspension letter, Worthen was suspended without pay on April 10 and 11, 2012. (Def.'s SUF ¶ 24.)

Worthen claims the suspension was racially motivated because: (1) the suspension was unreasonably delayed (Pl.'s Additional Disputed Facts ¶ 4, ECF No. 46), (2) he should not have been punished for the dress code violation and tardiness because the training was not mandatory (*id.* ¶ 2); (3) that a Caucasian officer also arrived to training late and was not disciplined (Worthen Decl. ¶ 7); and (4) Captain Hall did not consider statements from two African American police officers, Guy Smith and Iereneo Iose, in deciding to sustain the charge that Worthen was sleeping on duty (Pl.'s Additional Disputed Facts ¶ 3). After considering these arguments and the evidence submitted in support thereof, the Court finds that Worthen has not adequately demonstrated that Defendant's reasons for suspending him are pretextual.

Regarding the delay in suspension, Defendant responds that a large part of the delay was due to Worthen, when he requested, and was granted, an approximately four-month extension to respond to the Notice of Proposed Suspension. (Reply 2, ECF No. 50.) The Court finds that the record supports this assertion.

To support his argument that the training was not mandatory, Worthen provides the declaration of Officer Aubry Walker, who states that she will testify that "Sergeants, Lieutenants and Officers come to training late and are allowed to participate in the training exercise, its [sic] voluntary and not a part of our core

hours[]." (Decl. of Aubry Walker ("Walker Decl."), ECF No. 46 at 126.) Defendant disputes this contention and responds that training is a "critical task" for the position. (Reply 3, ECF No. 50) Whether the training is mandatory is irrelevant. The relevant question is whether Defendant disciplined other officers who arrived late to training without a valid excuse. Worthen has not submitted any evidence as to this point.

Worthen does argue that a Caucasian officer arrived late to training and was not disciplined. Defendant points out, however, that two other African American officers were also late to training that day, but all three individuals had excuses for their tardiness. (Mot. 15.) Worthen acknowledged at his deposition that the other late officers all provided excuses when they arrived. (Def.'s App. 197.)

Regarding Worthen's final argument as to the investigation of the sleeping-on-duty charge, Worthen's evidence does not establish that Defendant's justification for suspension on this charge "is unworthy of credence." *See Chuang*, 225 F.3d at 1123. Worthen presents evidence that he was not actually sleeping on the job in the form of his own declaration and the declarations of two other officers who say they did not see him sleeping. (Worthen Decl. ¶ 9; Decl. of Guy Smith ("Smith Decl."), ECF No. 46 at 128; Decl. of Iereneo Iose ("Iose Decl."), ECF No. 46 at 129.) But whether Worthen was actually sleeping is not the relevant inquiry. Captain Hall decided to suspend Worthen for the various charges of misconduct, including the sleeping-on-duty charge. Worthen fails to proffer any evidence that Captain Hall knew, or thought, that there were conflicting accounts of whether Worthen was sleeping on duty. For example, Worthen does not establish that Captain Hall was aware of Officers Smith or Iose's beliefs that Worthen was not sleeping at the time Captain Hall decided to suspend him. Additionally, Captain Hall provided Worthen an opportunity to respond to the proposed charges against him, and Worthen failed to deny the sleeping-on-duty charge or direct Captain Hall to speak with Officers Iose or Smith. Accordingly, the evidence shows that, in deciding to suspend him, Captain

Hall was operating under his good faith belief that Worthen was sleeping on the job. Worthen fails to legitimately call into question this reason for his suspension.

Ultimately, Worthen's attempts to show evidence of discrimination or pretext amount to mere denials of Defendant's proffered reasons for the suspension, which is not sufficient to defeat summary judgment. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006); *Schuler v. Chronicle Broad. Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986). Worthen has not demonstrated that other similarly situated employees were treated more favorably, as he has not identified any other worker who "amassed a record of misconduct comparable to" his own. *See Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). Additionally, even if Captain Hall's investigation as to the proposed charges for suspension was flawed, the record is devoid of any indication that he lacked a sincere belief in his findings. *See Vallimont v. Chevron Energy Tech. Co.*, 434 F. App'x 597, 599 (9th Cir. 2011) (unpublished); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Worthen has not demonstrated that the suspension was more likely motivated by race than by Defendant's articulated reasons.

### 2. *Payment Delay*

On April 25, 2012, Air Force management notified Worthen that there was a problem with his payment for the two-week pay period from April 8, 2012, to April 21, 2012. (*Id.* ¶ 25.) Defendant claims that the error was a simple mistake or computer error because after Worthen returned from his suspension, on April 14th, the return-to-work certification was not updating the corresponding payroll account. (Mot. 7.) Defendant submits internal emails of its staff discussing the issue, including an email from Captain Hall requesting that emergency pay be given to Worthen. (Def.'s SUF ¶ 28.) Worthen received additional retroactive pay on his next paycheck for the next pay period to cover for the shortfall. (*Id.* ¶ 29.) Defendant claims that this was a simple pay processing error and that Worthen's supervisor and other employees worked diligently to correct the problem quickly.

Worthen argues that the payment delay was caused by someone tampering with his timecard to cause him emotional distress, based on racial discrimination or retaliation for reporting the suspension to the EEOC. (*See* Worthen Decl. ¶ 15.) Worthen submits several payroll-related documents with his opposition, but does not explain how they establish tampering or forgery. (ECF No. 46 at 141–48.)

Worthen fails to demonstrate a genuine dispute of material fact rebutting Defendant's evidence that the delay in payment was due to a processing error. For example, he has not established that Defendant suspended similarly situated officers, but paid them immediately. Worthen has not presented evidence, other than his own unsupported assertions, that the payment delay, in April 2012, was more likely motivated by race or retaliation. Defendant's evidence supports its contention that the payroll issue was a simple computer error, and Worthen presents no evidence to contradict that claim. Therefore, the Court concludes that summary judgment is appropriate on Worthen's claims relating to the April 2012 suspension and payment delay.

**C.   June 2013 Events**

Worthen claims that three events/actions, in June 2013, were racially motivated: (1) Sergeant Shelly Lewis told Worthen that his hair stinks because he was using too much Sulfur 8 product; (2) Sergeant Lewis told Worthen to use a microphone while on patrol; and (3) Worthen was assigned to Gate 1 more than other officers.

First, the Court finds that Sergeant Lewis' statements regarding Worthen's hair and using a microphone do not amount to materially adverse actions. The definition of adverse employment action does not extend to rude or offensive comments or mere ostracism. *Blount v. Morgan Stanley Smith Barney LLC*, 982 F. Supp. 2d 1077, 1082 (N.D. Cal. 2013); *see also Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112–13 (9th Cir. 2000).

As to Worthen's complaint that he was assigned too often to Gate 1, the Court finds that he has failed to rebut Defendant's proffered justifications for those

assignments. Defendant argues that Worthen was temporarily assigned gate duty because his security clearance had been temporarily revoked. (Def.'s SUF ¶ 32.) Sergeant Roger Nienhuis, who created the assignment schedules, explained that Gate 1 is the only main gate at the base open on Sundays, so it requires more assignments for any two-week shift. (Decl. of Roger Nienhuis ("Nienhuis Decl.") ¶ 6, ECF No. 38-2.) Sergeant Nienhuis also testified that he did not assign Worthen disproportionately to Gate 1. (*Id.*) At his deposition, Worthen admitted that he had no evidence that the gate scheduling was discriminatory. (Pl.'s SMF ¶ 33; Def.'s App. 212.) Worthen also testified that Sergeant Nienhuis did not discriminate against him. (Pl.'s SMF ¶ 35, Def.'s App. 215.)

For these reasons, the Court finds that summary judgment is appropriate on Worthen's claims regarding the alleged events in June 2013.

**D.     Leave Restriction Letter**

On September 9, 2014, Lieutenant Benavente issued a leave-restriction letter to Worthen explaining that he was "concerned" about Worthen's health and excessive absences. (Def.'s SUF ¶ 36; Def.'s App. 108.) Lieutenant Benavente placed Worthen on leave restriction for one year, which required Worthen to provide medical documentation for any sick leave and directed him to call Lieutenant Benavente before taking any unscheduled absences. (Def.'s App. 108.) Worthen argues that the leave restriction was racially discriminatory and sent in retaliation for his previous EEOC complaints.

Defendant argues that the leave restriction was necessary due to Worthen's excessive absences. (Mot. 10.) Defendant also notes that the leave restriction did not prevent Worthen from taking leave, it simply required him to document the medical basis of such leave and call his supervisor before taking it. (*Id.*)

Defendant provides evidence of Worthen's history of unexcused absences and tardiness. Worthen received leave counseling[4] from his supervisor, Joe Perez, in 2008. (Def.'s SUF ¶ 4; Def.'s App. 194–96.) He received a leave-restriction letter from Perez in 2009. (Def.'s SUF ¶ 5; Def.'s App. 193, 195.) Worthen received additional leave counseling from Lieutenant Benavente in March 2011, and Lieutenant Benavente issued a leave-restriction letter to Worthen in September 2011. (Def.'s SUF ¶¶ 6–7, Def.'s App. 106.)

In the September 2014 leave-restriction letter, Lieutenant Benavente explained that since January 2014, Worthen had called in sick or was tardy twenty-six times. (Def.'s App. 108.) Worthen does not dispute that he took that many absences in 2014, nor that he received the previous leave counseling and leave-restriction letters in 2008, 2009, and 2011. Instead, Worthen claims that the 2014 leave-restriction letter violated the CBA and the Family and Medical Leave Act. However, Worthen acknowledged in his deposition that his employer never prohibited him from taking leave. (Reply, Ex. B, ECF No. 50-2.) Additionally, the language of the CBA explicitly permits Defendant to enforce leave restrictions. (ECF No. 46 at 65.) What Worthen does not provide, and what is necessary to successfully oppose summary judgment, is evidence that Defendant's action was more likely motivated by race or retaliation. Therefore, summary judgment is appropriate on Worthen's claims relating to the September 2014 leave-restriction letter.

### E. 2014 Revocation of Security Clearance

On October 22, 2014, after a year-long investigation into Worthen's credit and financial history, the Department of Defense Consolidated Adjudications Facility ("DoD CAF") temporarily suspended Worthen's security clearance pending a final adjudication. (Def.'s SUF ¶ 17; Def.'s App. 79.) As a result, Major Megan Hall, temporarily revoked Worthen's firearm authorization, which was her standard practice

---

[4] Under the CBA, Defendant had the right to initiate counseling with an employee who took excessive amounts of sick leave with insufficient medical documentation. (ECF No. 46 at 65.)

every time an officer under her command received a security-clearance suspension. (Decl. of Megan Hall ("Hall Decl.") ¶¶ 4–5, ECF No. 38-2.) On March 25, 2015, DoD CAF permanently revoked Worthen's security clearance. (Def.'s SUF ¶ 18, Def.'s App. 84.)

Worthen claims that Captain Hall and Major Hall subjected him to an additional background check that ultimately resulted in the revocation of his security clearance, and that they did so to retaliate against him for previous EEOC complaints or because of his race. Worthen also argues that Major Hall's decision to temporarily revoke his firearm authorization was discriminatory or retaliatory.

Defendant argues that the Court lacks jurisdiction to review the DoD CAF's decision to revoke Worthen's security clearance. (Mot. 21.) To the extent Worthen argues that the revocation of his security clearance forms the basis of his Title VII case, the Court agrees with Defendant. The Court cannot review the legitimacy of the DoD CAF's decision regarding Worthen's security clearance. *Dorfmont v. Brown*, 913 F.2d 1399, 1404 (9th Cir. 1990); *Hall v. U.S. Dep't of Labor Admin. Review Bd.*, 476 F.3d 847, 853 (10th Cir. 2007). However, the Court does not interpret Worthen's claims to encompass a request to review the merits of the DoD CAF's decision. Instead, Worthen complains of an alleged "additional background check" ordered by Captain Hall and Major Hall on October 30, 2014—which eventually led to his security clearance being revoked—and Major Hall's decision to suspend his firearm authorization. The Court has jurisdiction to adjudicate these complaints.

First, the record does not support Worthen's claim that Captain Hall or Major Hall ordered an "additional background check," and, if they did, that background check was not an adverse employment action because it had no effect on the security clearance revocation. Worthen claims that Captain Hall or Major Hall ordered the additional background check on October 30, 2014. (Def.'s App. 97–98 (Worthen's interrogatory responses); EEOC Complaint No. 9D1S15011, 2:16-cv-3181-ODW-JC Compl. Ex. 4, ECF No. 1.) By that date, however, the DoD CAF had already initiated

the investigation into Worthen's security clearance, as evidenced by a number of letters and the decision to temporary suspend his security clearance on October 22, 2014.

On June 10, 2013, the DoD CAF issued a letter indicating its preliminary decision to revoke Worthen's security clearance due to a number of outstanding debts and financial issues. (Def.'s SUF ¶¶ 10, 11; Def.'s App. 71–73.) On October 15, 2013, DoD CAF issued a Conditional Security Clearance Eligibility Letter requiring Worthen to file a report regarding his credit situation and debt repayment. (Def.'s SUF ¶¶ 13–15; Def.'s App. 75–78.) This letter provided that Worthen's "eligibility to remain in a sensitive position or hold security clearance eligibility [would] be reviewed 6 months from the date [he] acknowledge[d] receipt of this memorandum." (Def.'s App. 76.) DoD CAF then temporarily revoked Worthen's security clearance on October 22, 2014, citing continued financial and debt problems. (Def.'s SUF ¶ 17; Def.'s App. 79–83.) The Court finds (1) no evidence supporting Worthen's claim that Captain Hall and Major Hall ordered an additional background check to be performed on Worthen in October 2014 and (2) even if such a background check were to have been ordered, it had no adverse employment consequence due to the timing of DoD CAF's ongoing investigation into Worthen's financial troubles.

Second, Worthen has not established that Major Hall's decision to temporarily revoke his firearm authorization was motivated by race or retaliation. Worthen fails to present any evidence to rebut Defendant's evidence supporting Major Hall's decision, namely that (1) it was her standard operating procedure to temporarily suspend firearm authorization any time one of her officers received a security-clearance suspension, (2) she issued multiple such suspensions during her time in command, and (3) she never made an exception to this policy. (Hall Decl. ¶ 5.)

For these reasons, the Court finds that summary judgment is appropriate on Worthen's claims relating to his security-clearance suspension in October 2014.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 38.) The Court will issue judgment.

**IT IS SO ORDERED.**

May 7, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**